IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,064

In the Matter of JOAN M. HAWKINS,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 6, 2019. Disbarment.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and *Kimberly L. Knoll*, Deputy Disciplinary Administrator, was with him on the formal complaint for the petitioner.

No appearance by respondent.

*Per Curiam*: This is an uncontested original proceeding in discipline filed by the office of the Disciplinary Administrator against respondent, Joan M. Hawkins, of Lawrence, an attorney admitted to the practice of law in Kansas in 1999.

On August 30, 2018, the office of the Disciplinary Administrator filed a formal complaint against respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent did not file an answer. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 2, 2018, at which the respondent did not appear in person or by counsel. The hearing panel determined that respondent violated KRPC 1.3 (2019 Kan. S. Ct. R. 298) (diligence); 1.15(a) and (b) (2019 Kan. S. Ct. R. 334) (safekeeping property); 1.16(d) (2019 Kan. S. Ct. R. 339) (termination of representation); 8.1(b) (2019 Kan. S. Ct. R. 384) (failure to respond to disciplinary authority); Kansas Supreme Court Rule 207(b) (2019 Kan. S. Ct. R. 252) (failure to cooperate in disciplinary investigation); Kansas Supreme Court Rule 211(b) (2019 Kan. S. Ct. R. 257) (failure to file answer in disciplinary proceeding); and

1

Kansas Supreme Court Rule 218(a) (2019 Kan. S. Ct. R. 268) (failure to file motion to withdraw upon suspension).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"6.     On September 24, 1999, the Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas. On April 15, 2016, the Court suspended the respondent's license to practice law for a period of 18 months for having violated KRPC 1.16 (termination of representation), KRPC 3.2 (expedite litigation), KRPC 3.3 (candor to the tribunal), KRPC 3.4 (fairness to opposing party), KRPC 8.1 (cooperation), and KRPC 8.4 (professional misconduct). The respondent has not sought reinstatement of her license to practice law.

"DA12561

"7.     L.M. entered pleas of guilty to two serious felonies. Thereafter, the court sentenced L.M. to life imprisonment. Later, L.M.'s family retained an attorney to file a motion to set aside the guilty pleas.

"8.     Subsequently, the respondent entered her appearance on behalf of L.M. and filed an amended motion to withdraw plea. The court scheduled a three-day hearing on the respondent's motion for August 31, 2015, through September 2, 2015. The respondent represented L.M. at the hearing. Following the hearing, the court set a briefing schedule. The court directed the respondent to file a brief on behalf of L.M. not later than 28 days after the completion of the transcript. The district court provided the state with 28 days to respond and the respondent 14 days to reply.

"9.     On October 19, 2015, the court reporter certified the completion of the transcript and a copy of the transcript was delivered to the respondent, making the respondent's brief due on November 16, 2015. The respondent failed to file a brief on behalf of L.M. as ordered by the court. Additionally, the respondent failed to take any additional action on behalf of L.M.

"10.	On April 15, 2016, the Kansas Supreme Court suspended the respondent's license to practice law for a period of 18 months. In its opinion, the Court ordered the respondent to comply with Kan. S. Ct. R. 218. Kan. S. Ct. R. 218 requires suspended attorneys to notify clients, opposing counsel, and courts of record, within 14 days, that the attorney's license has been suspended. Kan. S. Ct. R. 218 also requires suspended attorneys to move to withdraw from all pending cases.

"11.	In a letter dated April 29, 2016, the respondent notified L.M. that the respondent's license to practice law had been suspended. The respondent, however, did not notify J.K., L.M.'s sister who held a power of attorney for L.M. The respondent failed to file a motion to withdraw from L.M.'s case.

"12.	Because the respondent failed to file a brief on behalf of L.M. and complete the representation, J.K. filed a complaint with the disciplinary administrator's office. Members of the disciplinary administrator's office directed the respondent to provide a written response to the complaint. The respondent . . . did not provide a written response to the complaint filed by J.K.

"13.	Terry Morgan, special investigator with the disciplinary administrator's office was assigned to investigate the complaint. Mr. Morgan also directed the respondent to provide a written response to the complaint. The respondent failed to do so.

"14.	During the investigation, the respondent left a voicemail message for Mr. Morgan, indicating that an attorney from Joseph & Hollander would be representing her. When Mr. Morgan contacted Joseph & Hollander, Mr. Morgan learned that the firm would not be representing the respondent.

"15.	The respondent failed to cooperate in the investigation.

"DA12577

"16.	The respondent represented C.U. in a divorce proceeding against R.U. The district court entered the decree of divorce on May 15, 2014. A term of the property

3

settlement agreement required R.U. to pay C.U. $32,172.50, to equalize the joint assets. In addition, the parties jointly held Horizon stock. Because the stock remained unsold at the time the district court entered the decree, the district court specifically retained jurisdiction over issues relating to the stock.

"17.    On December 3, 2014, the district court entered a *nunc pro tunc* Journal Entry, correcting a mathematical error which changed the equalization amount R.U. was to pay C.U. to $32,308.00. That same day, R.U. paid C.U. the required equalization amount.

"18.    Even though R.U. had already paid the equalization amount, on December 23, 2014, the respondent filed a motion to enforce the terms of the property settlement agreement, seeking to force R.U. to pay C.U. the equalization amount.

"19.    In January, 2015, counsel for Horizon notified the parties that Horizon wished to offer stock redemption to R.U. and C.U. Counsel for Horizon requested that C.U. sign a disclaimer of the interest so that the stock could be redeemed. The respondent and C.U. refused to sign the disclaimer because the parties disagreed as to who should bear the tax liability on the redemption.

"20.    Without accomplishing the stock redemption, the respondent stopped communicating with counsel for Horizon.

"21.    In August, 2015, R.U. listed her real property for sale. A month later, on September 17, 2015, the respondent filed a lien against R.U.'s real property for the equalization payment for an 'uncertain' amount, even though the equalization amount was certain and had already been paid. The respondent failed to notify R.U. or her counsel of the lien.

"22.    Without knowing of the lien, R.U. entered a contract for the sale of her real property and scheduled closing for April 7, 2016. One week prior to closing, the title company discovered the lien the respondent filed against R.U.'s real property. The improper lien filed by the respondent frustrated the progress of the sale of the real property.

4

"23.    On April 6, 2016, the respondent informed the title company that the amount of the lien was 'roughly $4,700.' The title company agreed to hold $4,700 in escrow. However, R.U. had already paid the entire amount owed to C.U.

"24.    On April 15, 2016, the same day the Supreme Court issued its opinion suspending the respondent's license to practice law, the respondent sent an email message to counsel for R.U. requesting to settle the Horizon stock matter prior to the hearing, scheduled for June 29, 2016.

"25.    On May 26, 2016, R.U. filed a complaint against the respondent. The disciplinary administrator directed the respondent to provide a written response to the complaint. The respondent failed to do so. The respondent failed [to] cooperate in the investigation of R.U.'s complaint.

"DA12597

"26.    At the time the Supreme Court suspended the respondent's license to practice law in April 2015, the respondent's attorney trust account balance was $37,846.66. After her license to practice law was suspended, the respondent made the following deposits into her attorney trust account:

| April 18, 2016 | $65.00 |
| April 19, 2016 | $3,497.00 |
| April 21, 2016 | $500.00 |
| June 1, 2016 | $.20 |
| June 1, 2016 | $4,918.08 |
| June 21, 2016 | $1,532.76 |
| September 1, 2016 | $75.00 |

"27.    The respondent used her attorney trust account for purposes in addition to holding client monies.

5

a.      On April 11, 2016, four days before the Kansas Supreme Court suspended the respondent's license to practice law, the respondent transferred funds from her retirement account in the amount of $18,400 from American Funds to her attorney trust account. That same day, the respondent wired $17,100 to the firm representing the respondent in the original disciplinary action, Joseph & Hollander and she returned $1,300 to the American Funds retirement account.

b.      On April 13, 2016, April 20, 2016, and September 27, 2016, the respondent paid a credit card bill directly from her attorney trust account.

"28.    The respondent's attorney trust account records indicate that she returned unearned fees to her clients beginning April 19, 2016, and continuing through September 22, 2016.

"29.    On August 4, 2016, Mary Trece Potter of Intrust Bank wrote to the disciplinary administrator regarding the respondent's operating accounts and attorney trust account. Ms. Potter reported that the bank had 'responded to numerous IRS Summons[es]' and it had 'processed several IRS Levies' on the respondent's law office. The disciplinary administrator's office considered Ms. Potter's letter to be a complaint and investigated the issues raised in Ms. Potter's letter.

"30.    The disciplinary administrator's office wrote to the respondent directing her to provide a written response to the complaint filed by Ms. Potter. The respondent did not respond to the complaint filed by Ms. Potter. The respondent did not cooperate in the investigation of Ms. Potter's complaint.

"31.    On August 30, 2018, Ms. Knoll filed a formal complaint. The respondent failed to file an answer to the formal complaint.

"*Conclusions of Law*

"32.    The respondent failed to appear at the hearing on the formal complaint. It is appropriate to proceed to hearing when a respondent fails to appear only if proper

6

service was obtained. Kan. S. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a)     Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . . .

'(c)     Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the disciplinary administrator complied with Kan. S. Ct. R. 215(a) by sending a copy of the formal complaint and the notice of hearing, *via* certified United States mail, postage prepaid, to the address designated in the respondent's most recent registration. Additionally, the disciplinary administrator sent a copy of the formal complaint and the notice of hearing to the respondent's current residential address. The hearing panel concludes that the respondent was afforded the notice that the Kansas Supreme Court Rules require and more.

"33.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3 (diligence), KRPC 1.15 (safeguarding property), KRPC 1.16 (termination of representation), KRPC 8.1 (cooperation), Kan. S. Ct. R. 207 (cooperation), Kan. S. Ct. R. 211 (duty to answer), and Kan. S. Ct. R. 218 (procedure following suspension), as detailed below.

"KRPC 1.3

"34.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent L.M. by failing to file a brief as directed by the district court. Because

7

the respondent failed to act with reasonable diligence and promptness in representing her client, the hearing panel concludes that the respondent violated KRPC 1.3.

## "KRPC 1.15

"35.     Lawyers must properly safeguard their clients' property. KRPC 1.15 provides, in pertinent part:

'(a)     A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

'(b)     Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

"36.     The record establishes that the respondent commingled her property with her client's property. This is evidenced by the respondent making a deposit from her retirement account into her attorney trust account, by the respondent paying her attorney from her attorney trust account, and by the respondent paying credit card bills from her attorney trust account. Because the respondent failed to hold client property separate from her own property, the respondent violated KRPC 1.15(a).

"37.     In this case, the respondent made several deposits into her attorney trust account after the Supreme Court suspended the respondent's license to practice law.

8

Because the respondent did not participate in the investigation or prosecution of this case, the hearing panel does not have an explanation for these deposits. The respondent may have been slow to deposit client funds, the respondent may have continued to practice law after the court suspended her license to practice law and the deposits represented payments for the unauthorized practice of law, the respondent may have been depositing her own money to cover for money which had been inappropriately taken on earlier occasions, etc. Even though the hearing panel does not know why the respondent made these deposits, the hearing panel can envision no factual scenario which would justify the respondent making deposits into her attorney trust account after her license to practice law [was] suspended. As such, the hearing panel concludes that the respondent violated KRPC 1.15(a).

"38.     There is no evidence to suggest that the respondent converted funds in her attorney trust account to her own use, as the record indicates the respondent eventually returned the funds to her clients. However, the record does establish that the respondent failed to promptly return the funds to her clients. The respondent did not refund some client money until late September 2016. Because the respondent failed to promptly return the funds to her clients, the hearing panel concludes that the respondent also violated KRPC 1.15(b).

"KRPC 1.16

"39.     KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

After representing L.M. in the three-day hearing to withdraw L.M.'s guilty pleas, the respondent failed to file a brief as required by the district court. Following the hearing, the respondent took no additional action on behalf of L.M. to protect L.M.'s interests. The hearing panel concludes that the respondent violated KRPC 1.16(d).

"KRPC 8.1 and Kan. S. Ct. R. 207(b)

"40.     Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. S. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority . . . .' KRPC 8.1(b).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

Kan. S. Ct. R. 207(b). The respondent knew that she was required to forward a written response to the initial complaints—she had been repeatedly instructed to do so in writing by members of the disciplinary administrator's office. Because the respondent knowingly failed to provide written responses to the three complaints, the hearing panel concludes that the respondent violated KRPC 8.1(b) and Kan. S. Ct. R. 207(b).

"Kan. S. Ct. R. 211(b)

"41.     The Kansas Supreme Court Rules requires an attorney to file an answer to the formal complaint. Kan. S. Ct. R. 211(b) provides:

'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

10

The respondent violated Kan. S. Ct. R. 211(b) by failing to file an answer to the formal complaint. Accordingly, the hearing panel concludes that the respondent violated Kan. S. Ct. R. 211(b).

"Kan. S. Ct. R. 218

"42.    Following an order of suspension or disbarment, the disciplined attorney must take certain steps under the Kansas Supreme Court Rules. Kan. S. Ct. R. 218 delineates an attorney's obligations:

'(a)    Attorney's Duty. When the Supreme Court issues an order or opinion suspending or disbarring an attorney or striking the attorney's name from the roll of attorneys, the attorney must, within 14 days of the order or opinion:

(1)    notify each client, in writing, that the attorney is suspended, disbarred, or is no longer authorized to practice law and the client should obtain new counsel;

(2)    notify all opposing counsel, in writing, that the attorney is suspended, disbarred, or is no longer authorized to practice law;

(3)    notify all courts where the attorney is counsel of record and the chief judge of the district in which the attorney resides, in writing, that the attorney is suspended, disbarred, or is no longer authorized to practice law;

(4)    file a motion to withdraw in each case in which the attorney is counsel of record; and

11

(5) notify each jurisdiction, in writing, where the attorney is or has been authorized to practice law that the attorney is suspended, disbarred, or is no longer authorized to practice law.'

The respondent notified L.M. that she was no longer able to represent him. There is also some evidence that the respondent notified C.U. that she was unable to continue to represent him. (Whether the respondent notified opposing counsel and the courts that her license was suspended and that she was no longer able to practice law is unclear.) However, the respondent failed to file a motion to withdraw from her representation of L.M. as required by Kan. S. Ct. R. 218(a)(4). According[ly], the hearing panel concludes that the respondent violated Kan. S. Ct. R. 218(a)(4) by failing to file a motion to withdraw from her representation of L.M.

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"43.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"44.     *Duty Violated*. The respondent violated her duty to her clients to provide diligent representation. The respondent also violated her duty to her clients to properly safeguard client property. Finally, the respondent violated her duty to the legal profession to cooperate in disciplinary investigations and comply with court rules.

"45.     *Mental State*. The respondent knowingly and intentionally violated her duties.

"46.     *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to her clients and the legal profession.

12

"47. *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a. Prior Disciplinary Offenses. The respondent has been previously disciplined on two occasions.

(1) On June 1, 2012, the respondent entered into the attorney diversion program, under Kan. Sup. Ct. R. 203(d), for violations of KRPC 1.3 (diligence) and KRPC 1.4 (communication).

(2) On April 15, 2016, the Supreme Court suspended the respondent's license to practice law for a period of 18 months for having violated KRPC 1.16 (termination of representation), KRPC 3.2 (expedite litigation), KRPC 3.3 (candor to the tribunal), KRPC 3.4 (fairness to opposing party), KRPC 8.1 (cooperation), and KRPC 8.4 (professional misconduct). The respondent has not sought reinstatement of her license to practice law.

b. Multiple Offenses. The respondent committed multiple rule violations. The respondent violated KRPC 1.3 (diligence), KRPC 1.15 (safeguarding property), KRPC 1.16 (termination of representation), KRPC 8.1 (cooperation), Kan. S. Ct. R. 207 (cooperation), Kan. S. Ct. R. 211(b) (duty to answer), and Kan. S. Ct. R. 218(a) (notice following suspension or disbarment). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

c. Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The respondent failed to provide written responses to the complaints, the respondent failed to file an answer to the formal complaint, and the respondent failed to appear at the hearing on the formal complaint. The respondent's failure

13

to participate in the disciplinary investigation and proceeding amounts to bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

  d. <u>Vulnerability of Victim</u>. L.M. and R.U. were vulnerable to the respondent's misconduct.

  e. <u>Substantial Experience in the Practice of Law</u>. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1999. At the time of the misconduct, the respondent had been practicing law for approximately 17 years.

"48. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. The record before the hearing panel is void of evidence in mitigation of the respondent's misconduct.

"49. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.12 Suspension is generally appropriate when a lawyer knows or should know that [the lawyer] is dealing improperly with client property and causes injury or potential injury to a client.

'4.41 Disbarment is generally appropriate when:

  (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

  (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

14

(c)     a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

'7.1     Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

'7.2     Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

'8.1     Disbarment is generally appropriate when a lawyer:

(a)     intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b)     has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

"50.     Because the respondent failed to respond in the disciplinary investigation and because the respondent failed to appear at the hearing on the formal complaint, Ms. Knoll argued that the 'bare minimum' discipline should be indefinite suspension from the practice of law. Ms. Knoll further suggested that the appropriate discipline is disbarment.

"*Recommendation of the Hearing Panel*

"51.     Based upon the findings of fact, conclusions of law, the Standards listed above, and the respondent's failure to participate in the disciplinary investigation and proceeding, the hearing panel unanimously recommends that the respondent be disbarred.

"52.     Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2019 Kan. S. Ct. R. 257). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

At the hearing before us, the Disciplinary Administrator made the following representations regarding attempts to obtain service on respondent:

16

"The panel did find in its final hearing report that adequate notice was given to the respondent pursuant to Supreme Court Rule 215. . . . The Clerk's office, pursuant to Supreme Court Rule 212(c), sent out a copy of the final hearing report and the table of contents to the respondent's residence and to her last registered address, office address, by certified mail. Numerous attempts were made to serve her at her office and at her house, and they were never claimed; so those came back to the Clerk's office in April 2019. Then by certified mail in June of 2019, the Clerk sent a certificate advising the respondent that this case was going to proceed, that no exceptions had been taken to the Final Hearing Report. That again was sent certified mail to . . . respondent's office and to her residence. It came back unclaimed. And then finally in September of 2019, by certified mail, a copy of the Supreme Court docket was sent to her residence. It was apparent at that time that she was no longer occupying her office. . . . It was returned unclaimed to the Clerk's office in October of 2019. And finally, my investigator, Bill Delaney, attempted to deliver a copy to respondent's residence in Lawrence of this Court's docket for this week on Tuesday evening; nobody answered the door. A copy of a letter from me and the Supreme Court docket were left in her mailbox, and we've had no response to that."

We find that Respondent was given adequate notice of the formal complaint, to which she did not file an answer. We further find that respondent was given adequate notice of the hearing before the panel for which she did not appear in person or by counsel. Respondent filed no exceptions to the panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2019 Kan. S. Ct. R. 261).

Furthermore, the evidence before the panel establishes by clear and convincing evidence the charged misconduct in violation of KRPC 1.3 (2019 Kan. S. Ct. R. 298) (diligence); 1.15(a) and (b) (2019 Kan. S. Ct. R. 334) (safekeeping property); 1.16(d) (2019 Kan. S. Ct. R. 339) (termination of representation); 8.1(b) (2019 Kan. S. Ct. R. 384) (failure to respond to disciplinary authority); Kansas Supreme Court Rule 207(b) (2019 Kan. S. Ct. R. 252) (failure to cooperate in disciplinary investigation); Kansas

17

Supreme Court Rule 211(b) (2019 Kan. S. Ct. R. 257) (failure to file answer in disciplinary proceeding); and Kansas Supreme Court Rule 218(a) (2019 Kan. S. Ct. R. 268) (failure to file motion to withdraw upon suspension). The findings and evidence support the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, the office of the Disciplinary Administrator recommended that the respondent be disbarred. The hearing panel unanimously recommended that the respondent be disbarred.

Respondent did not appear at this court's hearing, either in person or by counsel. There, the Disciplinary Administrator continued to recommend that the respondent be disbarred. We agree with the recommendation of both the Disciplinary Administrator and the unanimous panel. As a result, we hold that respondent is to be disbarred from the practice of law in the state of Kansas.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Joan M. Hawkins be and she is hereby disbarred in accordance with Supreme Court Rule 203(a)(1) (2019 Kan. S. Ct. R. 240), effective upon the date of the filing of this opinion.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

MICHAEL J. MALONE, District Judge Retired, assigned.[1]

---

[1]**REPORTER'S NOTE:** Retired District Judge Malone was appointed to hear case No. 121,064 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court created by the retirement of Justice Johnson.